# EXHIBIT A



JILLIAN KORNBLATT
Partner
(612) 492-6156
FAX (612) 465-5592
kornblatt.jillian@dorsey.com

January 7, 2020

**VIA FEDEX**

Michael Rabern
Nines Inc.
329 Alma St.
Palo Alto, CA 94301

      Re:    Your Contractual Obligations to Virtual Radiologic Corporation

Dear Mr. Rabern:

      Virtual Radiologic Corporation ("vRad") has retained Dorsey & Whitney LLP to enforce the terms of the Team Member Agreement you entered into with vRad on November 13, 2013 (the "Agreement") (enclosed). vRad has terminated its August 13, 2019 conditional grant of an amendment to the Agreement to allow you to work at Nines Inc. ("Nines") (the "Conditional Amendment") (enclosed), effective immediately, based on information it has learned indicating that you misrepresented the nature of Nines's business activities and that your employment with Nines violates your obligations under the Agreement. vRad has learned that you have violated both the Agreement and the then-in-effect Conditional Amendment, and demands that you immediately cease from engaging in any further violations of the Agreement. If you do not do so, vRad will enforce its legal rights through all means available.

      The Agreement contains provisions prohibiting you, during and for one year following your employment with vRad, from engaging in the following: competing employment, *see* Conflicting Employment (Section 5),

> **NO CONFLICTING EMPLOYMENT**: During Team member's employment with the Company and for a period of one (1) year after that employment ends, regardless of reason, whether voluntary or involuntary, Team member agrees that Team member will not directly or indirectly work for, consult with, lend assistance to, become engaged with, become associated with or otherwise render services to a Conflicting Organization in any capacity, directly or indirectly, alone or with another person or entity, whether as an employer, team member, sole proprietor, owner, investor, advisor, consultant, independent contractor, associate, principal, member, agent, partner, officer, director, shareholder, investor, lender, joint venturer or otherwise
>
> "<u>Conflicting Organization</u>" means any person (including Team member) or entity, and any parent, subsidiary, partner, or affiliate of any such person or entity, who or that engages in or is planning within one (1) year to become engaged in, creating, developing, designing, producing, promoting, selling, marketing,



January 7, 2020
Page 2

supporting or servicing a Conflicting Product or Service anywhere in the world where the Company sells, markets or has implemented a plan to sell or market any of its Company Products or Services.

A. "Company Product or Service" means any (a) product, service or technology or that the Company markets, sells or licenses, or (b) has designed, developed or conducted or acquired research and development prior to or during the term of Team Member's employment with the Company.

B. "Conflicting Product or Service" means any product, product under development, product line, product concept, service or technology that is the same or similar, competes with, may be substituted for, replaces, resembles, performs any of the same or similar functions, is used or intended to be used for any of the same purposes as a Company Product or Service;

soliciting vRad's customers, *see* Non-Solicitation of Customers (Section 6),

**NON-SOLICITATION OF CUSTOMERS.** Team Member further agrees that for a period of one (1) year following the Team Member's termination of employment, whether voluntary or involuntary, Team Member will not directly or indirectly, alone or with another person or entity, solicit business from, do business with, or have any business-related contact with any customer or prospective customer or aid in soliciting of a customer or prospective customer of the Company for any purpose relating to Conflicting Products or Services. For purposes of this paragraph, the term "customer or prospective customer" means any customer or client of the Company during the last 24 months of Team Member's employment with the Company and any prospective customer or client with whom or with which Team Member personally had direct or indirect contact or about whom or which Team Member saw, heard or otherwise obtained Trade Secrets, Confidential Information or other special knowledge as a result of Team Member's position with vRad;

and soliciting vRad's employees, *see* Non-Solicitation of Team Members (Section 8).

**NON-SOLICITATION OF TEAM MEMBERS.** Team Member agrees that for a period of one (1) year following the Team Member's termination, of employment, whether voluntary or involuntary, Team Member will not, directly or indirectly, cause or solicit, directly or indirectly, any team member or team members of the Company, to terminate their employment with the Company.

The Agreement also prohibits you from disclosing or using vRad's Confidential Information or Trade Secrets at any time. *See* Protection of Trade Secrets and Confidential Information (Section 1).

**PROTECTION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION:** Team member agrees to hold vRad Trade Secrets and Confidential Information in the strictest confidence during Team member's employment with vRad and to the



January 7, 2020
Page 3

fullest extent permitted by law after Team member's employment relationship with vRad is voluntarily or involuntarily terminated. To this end:

A.      Team member will not make copies of, permit copies to be made, download, or transfer or transmit by any means Trade Secrets and Confidential Information, except as necessary to carry out Team member's duties for the Company;

B.      Team member will not disclose any Trade Secret or Confidential Information to any person except other Company team members with a need to know the information or to persons who are authorized by vRad to receive the information and are bound by obligations of confidentiality and non-disclosure owed to vRad;

C.      Team member will take all reasonable precautions to prevent the inadvertent disclosure of Trade Secrets and Confidential Information to any unauthorized person;

D.      Team member acknowledges that the Company is the owner of the Company's Trade Secrets and Confidential Information and agrees not to contest any such ownership rights of the Company, either during or after Team member's employment with the Company.

In August 2019, you notified vRad that you had been offered a position as Head of Growth with Nines, a company you described as providing medical and radiologic artificial intelligence services.  You explicitly stated that Nines's products or services in no way overlapped with those of vRad, and accordingly, your employment with Nines would not constitute Conflicting Employment as defined in the Agreement.  You claimed that the revision to the Agreement was needed to ensure Nines that there would be no confusion regarding the scope of your ability to provide services for a company involved with radiology-related artificial intelligence.  At the time, Nines's website offered little information about its products and services, and vRad took you at your word that you would not be working for a Conflicting Organization.  Accordingly, vRad granted you the Conditional Amendment limiting some aspects of the Agreement.

The Conditional Amendment modified Section 5 (No Conflicting Employment), Section 6 (Non-Solicitation of Customers), and Section 8 (Non-Solicitation of Team Members) of the Agreement as follows:

2. **Revision of Restricted Periods.** The time periods contemplated in Sections 5 (titled "No Conflicting Employment", hereinafter "Section 5")), 6 (titled "Non-solicitation of Customers", hereinafter "Section 6"), and 8 (titled "Non-solicitation of Team Members", hereinafter "Section 8") of the Agreement shall be defined as the "Restriction Periods." In consideration of (i) vRad's agreement to modify Sections 5 and 6 of the Agreement, and (ii) your agreement to modify Section 8 of the Agreement, we hereby agree to amend the Agreement as follows:



January 7, 2020
Page 4

    a. The restrictions binding on you under Sections 5 and 6 of the Agreement shall only apply to the fields of medical specialties in which MEDNAX, Inc. and its subsidiaries and affiliates (collectively, the "<u>MEDNAX Affiliates</u>") are engaged in the states of Alabama, Connecticut, Florida, Georgia, Kentucky, South Carolina, Tennessee, and the U.S. territory of Puerto Rico.

    b. You acknowledge and agree that any activity that would directly or indirectly compete with a service or other offering of a MEDNAX Affiliate practice or entity in any jurisdiction would constitute a Conflicting Product or Service (as defined in the Agreement).

    c. The non-solicitation restrictions under Section 8 of the Agreement shall also apply to all radiologists employed by, or directly or indirectly contracted to provide services on behalf of, any vRad affiliate.

The Conditional Amendment states that other provisions of the Agreement remain in effect.

Since that time, vRad has learned that, contrary to your assurances in negotiating the Conditional Amendment, Nines provides teleradiology services. *See* https://www.nines.com/, "Nines supercharges our customers by offering actionable teleradiology reports delivered in a timeframe they can count on. Our happy, trusted radiologists create state-of-the-art technology to prioritize patient care." As a provider of teleradiology services, Nines falls squarely into the definition of a Conflicting Organization providing Conflicting Products and Services, as defined in the Agreement. Furthermore, upon information and belief, vRad understands that Nines just announced the closing of a 2018 Series A financing round, which makes clear that Nines was planning to provide these services well before your employment with it began and that you intentionally misrepresented the nature of Nines's business to vRad in seeking the Conditional Amendment. **Based on your intentional misrepresentation of the nature of Nines's business, vRad considers the Conditional Amendment void and your employment with Nines to be in violation of your contractual obligations under the Agreement.**

vRad has also learned of multiple other instances that do or could represent violations of your obligations under the Agreement—and the Conditional Amendment:

1) vRad recently learned that you called vRad employee Katherine Chapman and attempted to recruit her to become an employee of Nines. This action is a clear violation of the Non-Solicitation of Team Members (Section 8) provision of the Agreement, which remains in full effect even under the Conditional Amendment.

2) On January 3, 2020, vRad was informed by Mr. Greg Cassimus that you had called him. Mr. Cassimus is the Practice Administrator of Radiology Associates of Macon, a vRad client in Georgia, who was known to you through your work at vRad. This client solicitation was in violation of (i) the Non-Solicitation of Customers provision (Section 6) of the Agreement; (ii) Section 2.a of the Conditional Amendment, which expressly retained your customer non-solicitation restrictions in certain states, including Georgia;



January 7, 2020
Page 5

        and (iii) the Protection of Trade Secrets and Confidential Information provision (Section 3) of the Agreement.

    3) On January 3, 2020, after learning of the issues above, vRad discovered that, shortly before you tendered your resignation to accept a position with Nines, you emailed numerous pieces of confidential vRad information from your vRad email account to your personal email account, in clear violation of the Protection of Trade Secrets and Confidential Information provision (Section 3) of the Agreement.

    4) Dr. Jason Itri, a radiologist employee of a vRad affiliate, recently tendered his notice of termination in order to work for Nines. Any role you played in soliciting Dr. Itri constitutes a violation of the Non-Solicitation of Team Members provision (Section 8) of the Agreement and Section 2.c of the Conditional Amendment.

**vRad demands that you immediately cease and desist in your violations of the Agreement. vRad also demands that you, no later than Monday, January 13, 2020:**

    1) Provide vRad, through undersigned counsel, with a comprehensive accounting of all vRad confidential or trade secret information, regardless of format, that you: (a) transmitted or otherwise removed from vRad systems at any point; (b) have in your possession or within your direct or indirect control; or (c) have provided to any other party, including Nines;

    2) Destroy all vRad confidential or trade secret information in your possession or within your direct or indirect control, and demand that that any third party to whom you have given such information do the same; and

    3) Certify to vRad that you have taken the steps requested in this letter.

    Should you refuse to comply with this request or proceed with continued violations of the Agreement, vRad will aggressively enforce its legal rights to the fullest extent of the law, including, but not limited to, seeking injunctive relief and monetary damages.

    vRad also reminds you of your obligations under the Agreement, as well as federal and state law, not to use or disclose any of vRad's Confidential Information or Trade Secrets. Any wrongful taking, possession, use, or disclosures of this information would constitute federal and state misappropriation of trade secrets, conversion, and a breach of the duty of loyalty. As you may or may not know, both the federal Defend Trade Secrets Act and state Uniform Trade Secrets Act provide for recovery of attorneys' fees, as well as exemplary damages.

    In the event of litigation, note that you are required to retain and preserve all information, data, communications, or documentation, whether hard copy or electronic, potentially related to this matter, including, but not limited to, documents and information regarding: (1) your use or disclosure of any of vRad's confidential or proprietary information (but, as stated above, vRad demands that you destroy its confidential or proprietary information); (2) your discussions with Nines regarding your employment with vRad and/or your legal obligations to vRad; (3) your

4845-3092-7280\4



January 7, 2020
Page 6

discussions and negotiations with Nines regarding your employment with it; (4) your employment with vRad; and (5) any interactions with any customer or employees of vRad.

    This preservation obligation includes, but is not limited to, all documents, telephone records, email exchanges, text messages, instant messages, video or audio files, social media posts, and other material in your possession whether on a work or personal computer, mobile device, tablet, electronic storage medium (disc, jump drives, USB storage ports, stick drives, thumb drives, external hard drives, etc.) or any other electronic equipment. All such material should be sequestered and kept in the original condition as it exists today without modification in order to keep such information from spoliation.

    Please contact me, or, if you are represented by counsel, have your attorney contact me, by January 13, 2020 to confirm that you have ceased all conduct in violation of the Agreement and taken all steps requested in this letter. I trust that you will take this matter as seriously as vRad does.

                         Sincerely,

                           DORSEY & WHITNEY LLP

                           Jillian Kornblatt
                           Partner

JK:ac

Enclosures

CC: Jessica Linehan, Esq.

4845-3092-7280\4

**VIRTUAL RADIOLOGIC CORPORATION TEAM MEMBER AGREEMENT**

This Agreement is made and entered into as of ___11/13/13_____ [1], by and between Virtual Radiologic Corporation and the individual named below ("Team member").

**Recitals**

      A.      Virtual Radiologic Corporation and its subsidiaries and affiliated medical practices (hereinafter "vRad" or the "Company") comprise a technology-enabled national radiology practice working in partnership with local radiologists and hospitals across the country utilizing a virtual platform of teleradiology workflow technologies.

      B.      Teleradiology is a highly competitive business that can be conducted from, and offer services to, virtually any location in the world, and requires unique operational, sales, marketing and other strategies.

      C.      vRad has invested significant resources in: (1) developing valuable Trade Secret and Confidential Information (as defined below) to develop and execute its world-wide operational, sales and marketing strategies; (2) establishing customer loyalty and goodwill; and (3) recruiting and training of its specialized workforce.

      D.      Through his or her employment with vRad, Team member will be entrusted with and exposed to vRad's valuable assets including Trade Secret and Confidential Information, and its customer goodwill, and will personally benefit from those assets.  vRad and Team member both have an interest in protecting these valuable assets, and agree that the restrictive covenants contained in this Agreement are reasonable and necessary to protect the Company's legitimate business interests.

NOW THEREFORE, in consideration of the covenants and promises contained herein, of Team member's employment by the Company, and of the compensation and benefits received by Team member from the Company, all of which Team member acknowledges are good and valuable consideration for Team member entering into this Agreement, the parties agree as follows:

**AGREEMENT**

**1.**      **DEFINITIONS:** The following definitions apply to this Agreement.

      A.      "<u>Company Product or Service</u>" means any (a) product, service or technology or that the Company markets, sells or licenses, or (b) has designed, developed or conducted or acquired research and development prior to or during the term of Team Member's employment with the Company.

      B.      "<u>Conflicting Product or Service</u>" means any product, product under development, product line, product concept, service or technology that is the same or similar, competes with, may be substituted for, replaces, resembles, performs any of the same or similar functions, is used or intended to be used for any of the same purposes as a Company Product or Service.

C.  "Conflicting Organization" means any person (including Team member) or entity, and any parent, subsidiary, partner, or affiliate of any such person or entity, who or that engages in or is planning within one (1) year to become engaged in, creating, developing, designing, producing, promoting, selling, marketing, supporting or servicing a Conflicting Product or Service anywhere in the world where the Company sells, markets or has implemented a plan to sell or market any of its Company Products or Services.

D.  "Trade Secret" means information that the Company uses in its business and that is the subject of reasonable efforts by the Company to maintain its secrecy, including without limitation, any formula, compilation, program, device, method, technique, process, concept, design, or idea that derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use.

E.  "Confidential Information" means private, competitively sensitive, confidential, or proprietary information or material that is the special and unique property of or relates to vRad and that is not generally known by persons not employed by vRad or its business partners, and that derives independent economic value from not being generally known or ascertainable by proper means, but which does not constitute one or more Trade Secrets as described above. This includes all such information, whether prepared by the Company or Team member and whether in written form or committed to Team member's memory, including but not limited to:

1.  information regarding inventions, business affairs, processes, products, discoveries, prices, costs, technical matters, apparatus, product designs, discounts, copyrights, and future plans;

2.  customer information such as the identity of vRad's past, present and prospective customers, surveys, customer research, customer meetings, customer account records, sales records, training and servicing materials, programs, techniques, sales and contracts;

3.  vRad's financial data including financial statements and projections, pricing information, costs, sales, budgets and profits;

4.  company manuals and policies, computer programs, software, source code, systems architecture, flow charts, and licensing agreements; and

5.  any document marked "Confidential," or any information which Team member has been told is confidential or which Team member might reasonably expect the Company would regard as confidential, or any information which has been given to the Company in confidence by customers, suppliers or other persons.

**2.   COMPLIANCE WITH PRIOR AGREEMENTS AND DUTIES:**  Team member represents and warrants that Team member is not currently subject to a non-competition, confidentiality or other such agreement with a former employer or other entity which prohibits or restricts Team member from working for vRad.  Team member represents and warrants to vRad that Team member has not brought and will not bring to vRad any proprietary information, customer lists, trade secrets, confidential

information, or any other property which belongs to any former employer.  Team member agrees and understands that vRad forbids the use of any such confidential information, trade secrets, or property.

**3.     PROTECTION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION:** Team member agrees to hold vRad Trade Secrets and Confidential Information in the strictest confidence during Team member's employment with vRad and to the fullest extent permitted by law after Team member's employment relationship with vRad is voluntarily or involuntarily terminated. To this end:

   A.     Team member will not make copies of, permit copies to be made, download, or transfer or transmit by any means Trade Secrets and Confidential Information, except as necessary to carry out Team member's duties for the Company;

   B.     Team member will not disclose any Trade Secret or Confidential Information to any person except other Company team members with a need to know the information or to persons who are authorized by vRad to receive the information and are bound by obligations of confidentiality and non-disclosure owed to vRad;

   C.     Team member will take all reasonable precautions to prevent the inadvertent disclosure of Trade Secrets and Confidential Information to any unauthorized person;

   D.     Team member acknowledges that the Company is the owner of the Company's Trade Secrets and Confidential Information and agrees not to contest any such ownership rights of the Company, either during or after Team member's employment with the Company.

**4.     INTELLECTUAL PROPERTY; DISCLOSURE AND ASSIGNMENT:** Team member shall promptly disclose to the Company, without additional compensation, all ideas, discoveries, inventions and improvements, whether patentable or not which, while the Team member is employed by the Company, are made, conceived or reduced to practice by Team member, alone or with others, during or after usual working hours, either on or off the job. For the Company's sole, benefit, Team member hereby assigns to the Company all such ideas, discoveries, inventions and improvements to be the Company's exclusive-property.

**5.     INTELLECTUAL PROPERTY; DISCLOSURE AND RIGHT OF FIRST REFUSAL:** The immediately preceding paragraph of this Agreement shall not apply to any ideas, discoveries, inventions and improvements for which no equipment, supplies, facility or trade secret or confidential information of the Company was used, and which was developed entirely on Team member's own time, and (1) does not relate (a) directly to the business of the Company or (b) to the Company's actual or anticipated research or development, or (2) does not result from any work performed by Team member for the Company. Team member will, nonetheless, promptly disclose all such ideas, discoveries, inventions and improvements to the Company and offer to the Company the right of first refusal to enter into a license or purchase agreement covering the subject idea, discovery, invention or improvement on terms mutually agreed to by Team member and the Company.  In the event the Company and Team member cannot agree on terms and Team member receives an offer to enter into a license or purchase agreement with some other party on terms more favorable to that other party than the terms offered to the Company, then the Company shall have the right and Team member shall have the obligation to offer to the Company, by written notice and accompanied by sufficient descriptions and documentation, the idea, discovery, invention or improvement on such favorable terms. When such an offer is made to

the Company pursuant to the preceding sentence the Team member agrees to negotiate with the Company on an exclusive basis for a period of not less than thirty (30) days, unless such period is earlier terminated by the Company.

**5.     NO CONFLICTING EMPLOYMENT:** During Team member's employment with the Company and for a period of one (1) year after that employment ends, regardless of reason, whether voluntary or involuntary, Team member agrees that Team member will not directly or indirectly work for, consult with, lend assistance to, become engaged with, become associated with or otherwise render services to a Conflicting Organization in any capacity, directly or indirectly, alone or with another person or entity, whether as an employer, team member, sole proprietor, owner, investor, advisor, consultant, independent contractor, associate, principal, member, agent, partner, officer, director, shareholder, investor, lender, joint venturer or otherwise; *provided, however,* that Team member may be employed with or provide consulting services to a large diversified organization in a separate and distinct division that does not compete, directly or indirectly, with the Company, but only if: (A) the Company first receives written assurances from the prospective employer and from Team member, satisfactory to the Company in its reasonable discretion, confirming that Team member will render no services, directly or indirectly, to any divisions or business units that independently would qualify as a Conflicting Organization; and (B) the Company's General Counsel gives advance written approval for Team member to provide the proposed employment or consulting services.

**6.     NON-SOLICITATION OF CUSTOMERS.**  Team Member further agrees that for a period of one (1) year following the Team Member's termination of employment, whether voluntary or involuntary, Team Member will not directly or indirectly, alone or with another person or entity, solicit business from, do business with, or have any business-related contact with any customer or prospective customer or aid in soliciting of a customer or prospective customer of the Company for any purpose relating to Conflicting Products or Services.  For purposes of this paragraph, the term "customer or prospective customer" means any customer or client of the Company during the last 24 months of Team Member's employment with the Company and any prospective customer or client with whom or with which Team Member personally had direct or indirect contact or about whom or which Team Member saw, heard or otherwise obtained Trade Secrets, Confidential Information or other special knowledge as a result of Team Member's position with vRad.

**7.     NON-INTERFERENCE:**  During and after the Team member's employment by the Company, the Team member will not interfere with or impair the relationship between the Company and any of its vendors or suppliers.

**8.     NON-SOLICITATION OF TEAM MEMBERS.** Team Member agrees that for a period of one (1) year following the Team Member's termination, of employment, whether voluntary or involuntary, Team Member will not, directly or indirectly, cause or solicit, directly or indirectly, any team member or team members of the Company, to terminate their employment with the Company.

**9.     TEAM MEMBER'S INABILITY TO CONTRACT:** Team member will not have the right to make any contracts or commitments for, or on behalf of, the Company without first obtaining the express written consent of the Company.  In the event the Team member violates this provision, the Team member agrees that he/she shall be personally liable for any damages as a result of such violation.

**10.    RETURN OF PROPERTY:**  Upon termination of employment, Team member shall deliver all vRad property (including but not limited to keys, records, notes, data computer storage media, memoranda, models, and equipment) that is in the Team member's possession or under the Team member's control. Team member also will, upon termination of employment with the Company or upon request by the Company, deliver promptly to the Company and permanently delete from any electronic media in Team member's possession, custody, or control, or to which Team member has access, all Trade Secret and Confidential Information, whether in hard copy, electronic or other form, or copies thereof, and will permit the Company to inspect non-Company computer(s) and/or mobile devices used to conduct Company business and remove from such non-Company computer all data belonging to vRad.

**11.    GOVERNING LAW AND JURISDICTION:**  This Agreement shall be governed by, and construed and interpreted in accordance with the laws of the State of Minnesota, without regard to its conflicts of law doctrine.  Any claim or controversy related to the interpretation or enforcement of this Agreement will be subject to the exclusive jurisdiction of the state and federal courts located in Hennepin County, Minnesota, and Team member hereby consents to the jurisdiction of such courts.

**12.    INJUNCTIVE RELIEF.**  Team member acknowledges and agrees that in the event of any breach or threatened breach by Team member of any of the provisions of this Agreement, damages will be an inadequate remedy and the Company will suffer irreparable harm.  As a result, the Company will be entitled to injunctive or other equitable relief.  Any action brought by either party for injunctive, declaratory or other equitable relief must be brought exclusively in the state or federal court located in Hennepin County, Minnesota.  Team member agrees to submit to personal jurisdiction in the foregoing court and to venue in that court. Team member further agrees to waive all legal challenges and defenses to the propriety of a forum in Minnesota, to the application of Minnesota law therein, and to the requirement that the Company post a bond.  Team member agrees that the Company will be entitled to an accounting, and to disgorgement of all profits, compensation, commissions, fees, royalties, or other financial rewards which Team member or any other entity or person may realize as a result of Team member's violations of this Agreement. Team member will reimburse the Company for all costs, expenses or damages that it incurs as a result of any violation by Team member of any provision of this Agreement, including court costs, litigation expenses, and reasonable attorneys' fees.  These remedies shall be in addition to, and not in limitation of, any other rights or remedies to which Company is or may be entitled, including without limitation damages.

**13.    BLUE PENCIL DOCTRINE:**  If the duration, scope, or extent of any restricted activity covered by any provision of this Agreement exceeds that which is valid and enforceable under applicable law, such provision will be construed to cover only the duration, scope, or extent of activity that is determined to be valid and enforceable.

**14.    ENTIRE AGREEMENT/RELATION TO OTHER AGREEMENTS:** Except for any restrictions set forth in the Company's Equity Incentive Plan and awards thereunder, which shall be governed by the Plan Award agreement which remains in full force and effect in accordance with its terms, this Agreement contains the entire agreement of the parties relating to its subject matter and supersedes all prior agreements and understandings with respect to such subject matter.  The parties hereto have made no agreements, representations, or warranties relating to the subject matter of this Agreement that are not set forth herein.

**15.    EMPLOYMENT AT WILL:**  This Agreement shall not constitute a guarantee of continued employment or of any compensation or benefits provided by the Company.   Nothing in this agreement is intended to or shall alter Team member's status as an team member "at will" under applicable law.

**16.    ASSIGNABILITY:**   The rights and obligations contained herein shall be binding on and issue to the benefit of the successors and assigns of the Company. Team member may not assign his or her rights and obligations without the express written consent of the Company.

**17.    ACKNOWLEDGEMENTS:**  Team member acknowledges and agrees that should his/her employment with the Company end, the restrictions contained in this Agreement will not prevent Team member from earning a living outside of a Conflicting Organization.  Team member states that Team member has freely and voluntarily entered into this Agreement, and that Team member has read and understood each and every provision hereof.

_____Michael Rabern_____
Printed Name

\_\_\_\_*signature*_____
Signature



p 952.595.1100
f 952.942.3361
www.vrad.com

11995 Singletree Lane, Suite 500
Eden Prairie, MN 55344

August 13, 2019                                          VIA EMAIL (*Michael.Rabern@vrad.com*)

Michael Rabern
Senior Area Director – Telerad Sales

**RE:   Amendments to Team Member Agreement**

Dear Mike,

In connection with your potential employment by Nines, Inc., Virtual Radiologic Corporation ("vRad") has agreed to conditionally grant your request for: (1) confirmation that vRad does not view your prospective employment with Nines as conflicting with your obligations under the Agreement; and (2) a modification to the terms of the attached Team Member Agreement, dated November 13, 2013 (the "Agreement") between you and vRad.

By signing below, you and vRad agree that:

1. **Conditional Effectiveness of Amendment.** A critical consideration in executing this amendment to the terms of the Agreement (this "Amendment") is that the parties anticipate you will be employed by Nines through the end of the Restricted Periods (defined below), and as a result:

    a. this Amendment shall only become effective upon commencement of your employment with Nines;

    b. if you do not commence employment with Nines on or before October 1, 2019, the terms of this Amendment shall be automatically rendered null and void, with no further action required of either party; and

    c. if, before the expiration of the Restriction Periods, either (i) your employment with Nines terminates, or (ii) your commence employment with an entity other than Nines, you agree to notify vRad of such occurrence, and as of the date of either condition occurring (regardless of whether vRad has been notified), this Amendment shall automatically, and without any action required of either party, cease to be of any further force and effect after that date, and the terms of the Agreement shall revert to the terms effective immediately before the date of this Amendment.

2. **Revision of Restricted Periods.** The time periods contemplated in Sections 5 (titled "No Conflicting Employment", hereinafter "Section 5")), 6 (titled "Non-solicitation of Customers", hereinafter "Section 6"), and 8 (titled "Non-solicitation of Team Members", hereinafter "Section 8") of the Agreement shall be defined as the "Restriction Periods." In consideration of (i) vRad's agreement to modify Sections 5 and 6 of the Agreement, and (ii) your agreement to modify Section 8 of the Agreement, we hereby agree to amend the Agreement as follows:

    a. The restrictions binding on you under Sections 5 and 6 of the Agreement shall only apply to the fields of medical specialties in which MEDNAX, Inc. and its subsidiaries and affiliates (collectively, the "MEDNAX Affiliates") are engaged in the states of Alabama,

      Connecticut, Florida, Georgia, Kentucky, South Carolina, Tennessee, and the U.S. territory of Puerto Rico.

    b. You acknowledge and agree that any activity that would directly or indirectly compete with a service or other offering of a MEDNAX Affiliate practice or entity in any jurisdiction would constitute a Conflicting Product or Service (as defined in the Agreement).

    c. The non-solicitation restrictions under Section 8 of the Agreement shall also apply to all radiologists employed by, or directly or indirectly contracted to provide services on behalf of, any vRad affiliate.

3. **Clarification re "Special Knowledge."** For the avoidance of doubt, vRad understands the term "special knowledge," as used in Section 6 of the Agreement regarding restricted customers and prospective customers, to generally refer to any and all non-public information about such a party that you may have learned or become aware of as a result of your position as a member of vRad's sales organization.

4. **Scope of Amendment; Superseding Effect.** Unless otherwise explicitly modified by this Amendment, the terms of the Agreement shall otherwise remain unchanged and in full force and effect. In case of any conflict between the terms of this Amendment and the Agreement, the terms of this Amendment shall control.

5. **Execution.** The parties may execute this Amendment by authenticated digital signature, which shall have the same force and effect as an original, signed copy.

Sincerely,

*[DocuSigned by: Ryan Check, 649130BF8260411...]*

Ryan Check
Vice President and General Counsel – vRad

**ACKNOWLEDGED AND AGREED**

*[DocuSigned by: Michael Rabern, 4BFB461600A24C1...]*

Michael Rabern