UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| VIRTUAL RADIOLOGIC CORPORATION, | Case No. 20-CV-0445 (PJS/BRT) |
| Plaintiff, | |
| v. | ORDER |
| MICHAEL RABERN, | |
| Defendant. | |

Jillian Kornblatt, Trevor C. Brown, and F. Matthew Ralph, DORSEY & WHITNEY LLP, for plaintiff.

David L. Hashmall, Daniel R. Kelly, and Scott D. Blake, FELHABER LARSON, and Darryl M. Woo, GOODWIN PROCTER LLP, for defendant.

Defendant Michael Rabern is a former employee of plaintiff Virtual Radiologic Corporation ("vRad"). In August 2019, Rabern left vRad to join Nines, Inc. ("Nines"), a startup company based in California. In February 2020, vRad sued Rabern, alleging that he had violated several of the restrictive covenants in his employment agreement and that he had misappropriated confidential information and trade secrets.[1] vRad now seeks a preliminary injunction[2] to prevent Rabern from: (1) working for Nines or for

---

[1]The complaint also includes claims for breach of the duty of loyalty and unfair competition. ECF No. 1 at 17-18, 20-21.

[2]vRad's motion is styled as a motion for a temporary restraining order. But Rabern received notice of the motion, both sides had a full opportunity to brief the motion, and the Court held an evidentiary hearing on the motion. Accordingly, the Court treats the motion as one for a preliminary injunction. *See* Fed. R. Civ. P. 65; *see*

(continued...)

any other company in the teleradiology industry for a period of one year; (2) using or disclosing vRad's confidential information and trade secrets; and (3) soliciting current vRad employees.[3] The Court held an evidentiary hearing on vRad's motion on February 25, 2020, and heard arguments on the motion the following day.  For the reasons explained to the parties at the conclusion of oral argument and briefly summarized below, the Court denies vRad's motion.

Courts consider four factors in deciding whether to grant a preliminary injunction:  (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant if the injunction is not granted; (3) the balance between that harm and the harm that granting the injunction will inflict on the other parties; and (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).  "'[A] preliminary injunction is an extraordinary remedy,' and 'the party seeking injunctive relief bears the burden of proving' that these factors weigh in its favor." *Mgmt. Registry, Inc. v. A.W. Cos.*, 920 F.3d 1181, 1183 (8th Cir. 2019) (quoting *Watkins Inc.*

---

[2](...continued)
*also Wilmington Tr., N.A. v. Nelson*, No. 18-CV-3299 (PJS/DTS), 2018 WL 6819335, at *1 n.1 (D. Minn. Dec. 28, 2018).

[3]vRad also asks the Court to enjoin Rabern from soliciting vRad customers in violation of the non-solicitation clause of his employment agreement.  ECF No. 7 at 16, 40.  But vRad has introduced no evidence that Rabern has solicited or is likely to solicit any vRad customer in violation of the non-solicitation clause.  The Court therefore denies vRad's request.

*v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). Here, vRad has neither demonstrated a likelihood of success on the merits nor a threat of irreparable harm.[4]

### A. Alleged Violation of Non-Compete

vRad asserts that Rabern breached the non-compete provision of his employment agreement when he went to work for Nines. Rabern's original employment agreement essentially prohibited him for working for any competitor of vRad anywhere in the world for one year after his employment with vRad terminated. *See* ECF No. 1-1 at 2-5. Before leaving vRad, however, Rabern negotiated an amendment to his non-compete (as well as to the customer non-solicitation provision of his employment agreement) that narrowed the scope of the restrictions. *See* ECF No. 1-2. Indeed, Rabern's job offer from Nines was contingent upon Rabern's ability to secure such an amendment. ECF No. 20 ¶ 13; ECF No. 21 ¶ 11. vRad concedes that Rabern's employment with Nines does not violate the non-compete provision *as amended*.[5] vRad argues, however, that the

---

[4]vRad also seeks expedited discovery. ECF No. 7 at 37-39. That request should be addressed in the first instance to Magistrate Judge Becky Thorson.

[5]The amendment is poorly drafted, and neither party has proposed an interpretation of the amendment that both makes sense and comports with its text. vRad has had a particularly difficult time explaining the meaning of the amendment, even though vRad drafted it.

In its complaint and briefs, vRad repeatedly and clearly asserted that the effect of the amendment was to *narrow* the enforceability of the original non-compete and non-solicitation provisions to specific states—which necessarily means that those provisions would not apply to Rabern's activities outside of those states. *See* ECF No. 1 ¶ 35
(continued...)

amendment is void because it was induced by fraud. Specifically, vRad says that Rabern induced vRad to agree to the amendment by lying about the nature of Nines's business. ECF No. 7 at 24.

The parties give conflicting accounts of what Rabern told vRad about Nines when he asked vRad to amend his employment agreement. vRad swears that Rabern explicitly assured it that Nines was not engaged in teleradiology and that its business "did not overlap with vRad's services." ECF No. 9 ¶ 14. Rabern swears that he made

---

[5](...continued)
("Rabern and vRad agreed to enforce the restrictive covenants regarding conflicting employment and solicitation of vRad customers only in the states of Alabama, Connecticut, Florida, Georgia, Kentucky, South Carolina, and the U.S. territory of Puerto Rico."); ECF No. 7 at 11-12 ("At Rabern's insistence, the Conditional Amendment limited the geographical scope of his non-compete and customer non-solicit provisions.").

At the evidentiary hearing, however, vRad president Shannon Werb testified that he understood the amendment to *broaden* the restrictions on Rabern. According to Werb, all of the restrictions in the original agreement continue to apply, and the amendment imposes *additional* restrictions on Raburn in the specified states.

Following Werb's testimony, counsel for vRad briefly adopted his interpretation and, in a reversal of the position that vRad took in its complaint and briefs, suggested that Rabern's employment with Nines *did* violate the amended agreement. When the Court pointed out that vRad had said precisely the opposite in its complaint and briefs, vRad's attorney pivoted back to vRad's original interpretation, and conceded that Werb's interpretation was not correct.

This is a problem for vRad. Non-compete provisions are disfavored under Minnesota law. *Guidant Sales Corp. v. Baer*, No. 09-CV-0358 (PJS/FLN), 2009 WL 490052, at *2 (D. Minn. Feb. 26, 2009). A non-compete provision that is so badly drafted that its drafter cannot explain its meaning stands little chance of being enforced.

no such statement.⁶ ECF No. 20 ¶ 14. Neither side's account is entirely believable. On this record, the Court cannot find that vRad has a likelihood of success on the merits. *See Cannon Servs., Inc. v. Culhane*, No. 04-CV-1597 (ADM/AJB), 2004 WL 950414, at *3 (D. Minn. Apr. 30, 2004) ("directly contradictory" statements as to whether non-compete was supported by consideration "present a classic dispute of material fact that precludes finding a decisive likelihood of success by Plaintiffs").

But that is not the entire record. Perhaps the best evidence about what Rabern said to vRad to persuade it to amend his agreement is the amendment itself. And the amendment provides more support to Rabern's version of events than to vRad's.

vRad has insisted that the original non-compete provision only restricted Rabern from working for companies that compete with vRad—that is, companies that are involved in teleradiology.⁷ *See* ECF No. 7 at 10-11, 22. According to vRad, Rabern explicitly told vRad that Nines would not be involved in teleradiology. If that were true, however, then Rabern would not need to request—and vRad would not need to

---

⁶Rabern claims that he told his direct supervisor at vRad that "Nines' business involves radiology and [artificial intelligence]." ECF No. 20 ¶ 14. In an August 7, 2019 e-mail to his supervisor, Rabern described Nines as "a technology company based in California. They are not a live company and have no current products on the market . . . NONE." ECF No. 39-1. It appears that both of these statements were true when made.

⁷At the hearing, Werb testified that "companies in the industry that provide only artificial intelligence designed for use in radiology" are not competitors of vRad. Werb further testified that at least one former vRad employee now works for a radiology artificial intelligence company, and that his employment with that company does not violate vRad's non-compete provision.

provide—an amendment to his non-compete, because his employment with Nines would not *violate* that non-compete. vRad has no credible explanation for why it would agree to amend the non-compete of an employee who had assured it that nothing that he would be doing would violate the non-compete.

vRad says that Rabern asked vRad to confirm that Rabern's employment would not violate his non-compete. Such requests from departing employees are not uncommon. Typically, the old employer will ask for written assurances from the new employer about the scope of the departing employee's new duties, and then the old employer will affirm that, if the new employee performs only the duties described by the new employer, he will not be in violation of his non-compete.

The amendment to Rabern's non-compete does include a single sentence in which vRad affirms that vRad does not view Rabern's employment with Nines as a violation of the agreement.[8] ECF No. 1-2 at 2. But then the amendment goes on for two pages, making a number of changes to the employment agreement—the very employment agreement that vRad had just said would *not* be violated by Rabern's employment with Nines. As noted, the most significant of those changes purports to restrict the geographical scope of Rabern's non-compete to particular states. *Id*. at 2-3. This makes no sense if Rabern had told vRad—and if vRad had believed—that Rabern's

---

[8]Apparently, vRad made this representation based almost entirely on Rabern's say-so, without communicating in any way with Nines.

employment with Nines would not violate his original non-compete because Nines would not be involved in teleradiology. This does make sense if vRad knew (or suspected) that Nines *would* be involved in teleradiology—and that therefore Rabern would be violating his original non-compete—but vRad feared that the original non-compete was too broad to be enforceable. vRad is simply unable to reconcile its version of what Rabern said with the amendment that it drafted in response to what Rabern said.

It may well be that additional discovery will produce evidence showing that Rabern falsely represented the nature of the services offered by Nines. But at the preliminary injunction stage, the Court necessarily deals in probabilities. *See Dataphase*, 640 F.2d at 113. On this record, the Court cannot find that vRad is likely to succeed in proving that the amendment to Rayburn's employment agreement is void on a fraudulent-inducement theory. And because vRad has acknowledged that Rabern's employment with Nines does not violate the agreement *as amended*, the failure of vRad's fraudulent-inducement argument is fatal to its claim that Rabern breached the non-compete provision of the employment agreement.[9]

---

[9]Even if the Court were to find that vRad is likely to succeed in proving that the amendment was fraudulently induced, the Court still would not find that vRad is likely to succeed on its breach-of-contract claim because the Court has serious concerns about the enforceability of the original non-compete provision. "To be enforceable under Minnesota law, a restrictive covenant must be no broader than necessary to protect the employer's legitimate interests." *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386
(continued...)

vRad has also failed to establish a threat of irreparable harm. vRad argues that Rabern's continued employment at Nines will threaten vRad's "unique business strategy[] and customer goodwill." ECF No. 7 at 35. But employers always say this when a sales representative leaves. A risk of "harm to customer goodwill" stated in "general, conclusory terms" does "not show a likelihood of irreparable harm that, in turn, would justify issuing a preliminary injunction." *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1055-56 (D. Minn. 2019) (citing *Mgmt Registry, Inc. v. A.W. Cos.*, No. 17-CV-5009 (JRT/FLN), 2018 WL 461132, at *6 (D. Minn. Jan. 16, 2018), *aff'd*, 920 F.3d 1181 (8th Cir. 2019)).

---

[9](...continued)
F. Supp. 3d 1037, 1047 (D. Minn. 2019) (citing *Kallok v. Medtronic*, 573 N.W.2d 356, 361 (Minn. 1998)). Given that the employment agreement independently prohibits Rabern from (1) soliciting any vRad customer or prospective customer, (2) using, disclosing, or retaining any confidential information or trade secrets, and (3) soliciting any vRad employee, it is difficult to identify a legitimate interest of vRad's that is not protected by these clauses but is protected by the non-compete.

And even if there is some legitimate interest that the non-compete alone protects, the non-compete is drafted very broadly, and almost certainly is more expansive than necessary. For example, the non-compete bars vRad employees from working for or providing any kind of services to a competing organization anywhere in the world—a prohibition so wide-ranging that it would prohibit Rabern from accepting a custodial position with a vRad competitor in India or working for a caterer that delivers food to a vRad competitor in France. ECF No. 1-1 at 3-5; *see Midwest Sign*, 386 F. Supp. 3d at 1049 (non-compete was overbroad because it would prohibit former sales employee from "even working as a delivery driver" for a competitor); *Reisdorf v. i3, LLC*, 129 F. Supp. 3d 751, 775 (D. Minn. 2015) (non-compete clause was not enforceable because it was "broadly drawn, so as to prohibit the provision or offer of any services in any nature to a competitor of i3, without any geographic restriction").

This lawsuit illustrates why it is not sufficient for a former employer to allege generally that, unless a departing sales representative is enjoined from competing, the former employer will suffer harm to customer good will. Rabern has been employed by Nines since September 3, 2019. ECF No. 20 ¶ 18; ECF No. 19 at 6. In his six months on the job, neither Rabern nor anyone else at Nines has made a single sale of teleradiology services. vRad cannot identify a single customer—existing or prospective—who has given its business to Nines instead of vRad. And even if vRad had been able to identify such a customer, vRad has not explained why the harm caused by the lost business would be *irreparable*. *See Wells Fargo Ins. Servs. USA, Inc. v. King*, No. 15-CV-4378 (PJS/JJK), 2016 WL 299013, at *8 (D. Minn. Jan. 25, 2016) ("King stole clients away from WFI, and the main harm that WFI suffered is lost profits on the business of those clients. By definition, lost profits are 'reparable' through money damages."). Given these undisputed facts, the Court cannot find a risk of imminent irreparable harm.

B. *Alleged Misappropriation of Confidential Information and Trade Secrets*

vRad also seeks to enjoin Rabern from using or disclosing confidential information and trade secrets in violation of the employment agreement and federal and state law. ECF No. 7 at 16, 26. The only materials that vRad specifically cites as constituting confidential information or trade secrets are: (1) 11 screenshots of a vRad PowerPoint presentation that Rabern sent to his personal email address (the "screenshots") and (2) a PowerPoint presentation that Rabern prepared for his

interview with Nines (the "PowerPoint"). For the reasons discussed at the hearing on vRad's motion, the Court doubts that any of the information contained in either the screenshots or the PowerPoint constitutes confidential information or trade secrets under Rabern's employment agreement or federal or state law. *See* 18 U.S.C. § 1839(3); Minn. Stat. § 325C.01, subd. 5; ECF No. 1-1 at 3.

As for the screenshots: Rabern introduced evidence showing that virtually every item of information contained in the screenshots is either freely available on the Internet or available for purchase. *See* ECF No. 22. vRad's response to this evidence was to argue that, although no individual item of information might be confidential, the fact that the information was selected for inclusion in the vRad PowerPoint presentation and the manner in which vRad assembled and displayed the information were confidential. The Court does not doubt that the manner in which a party selects, organizes, and displays public information can qualify as a trade secret. But having reviewed the screenshots and listened to Werb struggle while testifying at the hearing to identify what about the screenshots was confidential, the Court concludes that it is unlikely that vRad will be able to convince a jury that the screenshots qualify as confidential information or trade secrets. *See Strategic Direction Grp., Inc. v. Bristol-Myers Squibb Co.*, 293 F.3d 1062, 1065 (8th Cir. 2002) (although a novel or unique combination of known elements may in some cases constitute a trade secret, the simple assertion that a trade secret resides in some combination of otherwise known data is insufficient).

As for the PowerPoint: At the evidentiary hearing, vRad did not seriously contend that the PowerPoint included confidential information or trade secrets, and for good reason. Rabern testified that all of the information in the PowerPoint was drawn from the Internet, from a friend who "works in outpatient imaging," and from his own knowledge and experience. Rabern further testified that none of the information came from vRad. vRad introduced no evidence contradicting Rabern's testimony.[10]

Even if the screenshots or PowerPoint did contain confidential information or trade secrets, the Court would not enjoin Rabern because neither Rabern nor Nines presently has access to this information or any other information related to vRad. After receiving notice from vRad that it suspected Rabern of misappropriating confidential information, Nines hired an outside firm to conduct a forensic examination of Rabern's personal and work laptops, his personal and work email accounts, his cell phone, and Nines's Google Drive for materials referencing vRad.[11] ECF No. 27 ¶ 4. Everything identified by this search was quarantined, and neither Nines nor Rabern has access to

---

[10]vRad argues in its brief that "[t]he substance of the presentation clearly incorporated vRad's market analysis and business strategies," ECF No. 7 at 13, but neither the Court's review of the presentation nor the testimony adduced at the hearing supports this argument. As far as the Court can tell, the presentation says nothing about teleradiology (vRad's business) and contains only generic market information and broad-stroke strategies related to the radiology industry. See ECF No. 9-1.

[11]Specifically, the forensic investigators applied the following search terms: "vrad!", "Virtual Radiologic!", "@vrad.com," "Mednax," and "Chapman." ECF No. 27 ¶ 4.

-11-

that information. *Id.* Under the circumstances, the Court is unable to find a credible threat of irreparable harm sufficient to justify a preliminary injunction.

### C. *Alleged Solicitation of vRad Employee*

Finally, the Court finds that a preliminary injunction enjoining Rabern from soliciting vRad employees is not warranted. The only evidence that Rabern has violated the employee non-solicitation provision of his employment agreement is testimony that he made one very brief phone call to a vRad employee named Katherine Chapman shortly after Rabern began working for Nines. ECF No. 8 ¶ 6. Chapman testified that during the call, Rabern asked her whether she would be interested in "getting back into a credentialing role." Although this question could reasonably be construed as a lead-up to a job offer, the inquiry was not itself an offer of employment. In fact, Rabern testified that he did not have a job to offer Chapman, even if she had expressed interest in getting back into credentialing. And while the employee non-solicitation clause is arguably drafted broadly enough to encompass the inquiry that Rabern made of Chapman, ECF No. 1-1 at 5, the threat of irreparable harm is negligible. There is no evidence that Rabern has had any forbidden contact with any vRad employee since his conversation with Chapman in September 2019, nor is there any evidence that any vRad employee has left the company to work for Nines. Under the circumstances, an injunction is not warranted.

ORDER

Based on the foregoing and on all of the files, records, and proceedings herein, and for the reasons stated on the record at the February 26, 2019 hearing, IT IS HEREBY ORDERED THAT plaintiff vRad's motion for a preliminary injunction [ECF No. 5] is DENIED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  March 5, 2020                          s/Patrick J. Schiltz
                                               Patrick J. Schiltz
                                               United States District Judge